Seth T. Taube
Paul J. Reilly JUDGE BATTS
Maureen P. Reid
30 Rockefeller Plaza
New York, New York  10112-4498
Tel:  (212) 408-2500
Fax:  (212) 408-2501

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK



11 CIV 4866

| | |
|---|---|
| TIGRIS FINANCIAL GROUP LTD. and THOMAS KAPLAN,<br><br>Plaintiffs,<br><br>-against-<br><br>TAIPAN PUBLISHING GROUP LLC and AGORA, INC.,<br><br>Defendants. | CIVIL ACTION<br><br>Civil Action No.<br><br><br>**COMPLAINT** |

Plaintiffs Tigris Financial Group Ltd. ("Tigris") and Thomas Kaplan, by and through their attorneys, Baker Botts L.L.P., for their Complaint against Defendants Taipan Publishing Group LLC and Agora, Inc. (individually and collectively, "Defendants"), respectfully allege as follows:

## NATURE OF ACTION

1.      This is an action by Tigris and Thomas Kaplan for unfair competition, false advertising, false and misleading representations or descriptions of facts and related claims under the United States Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq.* (as amended), and New York statutory and common law, and for violating the rights of privacy of Mr. Kaplan under New York law, including New York Civil Rights Law §§ 50 and 51.

2.      This action arises from Defendants' intentionally making unauthorized use of and improperly trading on the names and reputations of Plaintiffs in advertising, promotional or marketing materials disseminated electronically over the Internet to deceive and attract potential purchasers of its products/services.      Indeed, Defendants are making intentional false representations in commerce to consumers in online advertising materials that Mr. Kaplan and Tigris have used and/or benefitted from financial investing tools, strategies and the like being marketed and/or sold by Defendants through direct electronic mail and interactive pages on the Internet, all for their own financial gain and profit.  Defendants' illegitimate use of Plaintiffs' names and/or marks constitutes unfair competition, false and misleading representations or descriptions of facts, and false advertising.

3.      Plaintiffs additionally seek redress for Defendants' unauthorized use of Plaintiffs' names and/or marks which is also likely to cause consumers to be confused, mistaken or deceived as to the source of Defendants' products/services and into falsely believing that Plaintiffs are somehow affiliated with, related to, sponsor or endorse Defendants and/or their products or services, when that is not the case.

4.      This action also arises from the further willful and unauthorized use of Mr. Kaplan's name in commercial advertising and promotion of products and services offered by Defendants without Mr. Kaplan's permission, approval or consent in violation of his rights of privacy and publicity.

5.      The Defendants' unauthorized use of Plaintiffs' names and/or marks is likely to tarnish or disparage their reputations and the value of their business by tending to make them the subject of ridicule and contempt, by improperly associating Defendants' bogus product offerings with Plaintiffs, their business, names and/or marks.

6.      Plaintiffs have taken steps to avoid the need for court intervention by providing detailed notice of their rights to Defendants and requesting that they desist from their blatant false representations and all further unlawful use of Mr. Kaplan's and Tigris's respective names and/or marks.  Notwithstanding Plaintiffs' written demand that Defendants cease and desist from such unlawful conduct, Defendants refuse to comply and continue to willfully and intentionally violate Mr. Kaplan's rights of privacy and publicity and engage in unfair competition, false and misleading representations or descriptions of fact and false advertising, among other egregious conduct.

7.      Defendants' unlawful actions are damaging to Plaintiffs and it is clear that Defendants will not stop their wrongdoing unless and until ordered to do so by this Court.  As a result, Plaintiffs seek a preliminary and permanent injunction, and the recovery of any actual damages, treble damages, profits, costs, attorneys' fees, punitive damages and other relief as more fully set forth below.

## JURISDICTION AND VENUE

8.      This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, the New York Civil Rights Law §§ 50 and 51 and the common law of the State of New York.

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 1338 in that the action arises under the laws of the United States.  In addition, this Court has supplemental jurisdiction over the claims arising under the statutory and common law of the State of New York pursuant to 28 U.S.C. § 1367 because they are so related to claims in this action within the original jurisdiction of this Court so as to form part of the same case or controversy, and since they arise out of a common nucleus of operative facts with the Federal

claims. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states.

10.     This Court has personal jurisdiction over Defendants on the grounds that, among other things, upon information and belief, Defendants have continuous, systematic and routine contacts with New York. The Court has personal jurisdiction over Defendants for the additional reasons that, upon information and belief, Defendants, in person or through agents, among other things, (a) transact business within the State; (b) have committed tortious acts within the State; (c) have committed tortious acts outside the State causing injury to Plaintiffs within the State, and regularly do or solicit business, engage in persistent conduct, and derive substantial revenue from goods used or consumed or services rendered in inter-state commerce and should reasonably have expected their conduct to have consequences in New York.

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) in that a substantial part of the events or omissions giving rise to the claims occurred in this district, the events giving rise to the claims that did not occur in this district have a substantial economic effect in this district, and on information and belief, Defendants conduct business within this district.

## PARTIES

**Plaintiffs**

12.     Plaintiff Tigris Financial Group Ltd. is a privately held company with its principal place of business located at 535 Madison Avenue, New York, New York. Tigris is a New York-based investment firm with areas of focus that include the natural resources sector.

13.     Plaintiff Thomas Kaplan is an individual residing in New York, New York. He is the Chairman of Tigris Financial Group Ltd.

**Defendants**

14.     Defendant Agora, Inc. ("Agora") is a corporation organized under the laws of Maryland with its principal place of business located at 14 W. Mount Vernon Pl., Baltimore, Maryland.

15.     Defendant Taipan Publishing Group LLC ("Taipan") is a limited liability company organized under the laws of Maryland with its principal place of business located at 16 W. Madison St., Baltimore, Maryland. Taipan Publishing Group LLC is a subsidiary of Agora, Inc.

## FACTUAL BACKGROUND

**A.      Thomas Kaplan and Tigris**

16.     Thomas Kaplan is an entrepreneur, natural resources investor and philanthropist. He is an Oxford-trained historian turned investor. He began his career as an advisor to hedge funds in the field of strategic forecasting. In the early 1990s he founded a venture capital start-up company which discovered the world's largest open-pit silver deposit. He guided that company through a public offering and subsequent financings, ultimately enabling it to emerge as one of the industry's premier silver, zinc and lead development companies.

17.     Mr. Kaplan has earned his success and impeccable reputation as a businessman through his own years of hard work and diligent efforts. While Mr. Kaplan is well known in the financial world, he does not seek attention from the media and does not actively attempt to market his name, image or likeness, nor has he ever authorized the use of his name, image or likeness in order to advertise, market or endorse the goods and services of others. Mr. Kaplan focuses on his business and philanthropic ventures and essentially stays out of the public spotlight.

18.     Mr. Kaplan founded and developed Tigris, a privately held company which largely manages investments in gold and silver assets. Tigris, which has been operating under and using the name and mark "Tigris Financial Group Ltd." or variants for many years in connection with its investment services, currently manages billions of dollars in gold assets, and its affiliates hold large stakes in mining development firms throughout the world. Through Kaplan's insightful decision-making and strategic endeavors, Tigris is viewed as one of the leaders in the gold investing industry. Tigris's projects have attracted institutional and similar investors as a result of its stellar reputation in its field.

19.     In investment firms like Tigris, the public persona of a company's managers, officers and directors is at the core of its business. If a business' or officer's reputation is put at risk through false public claims it can be very detrimental to the future success of that company. Therefore, the reputation and image of a leader of a financial firm like Tigris must be closely protected against unfounded public assertions that may smear or denigrate its good name.

**B.     Defendants Are Unlawfully Attempting to Profit from the Use of Plaintiffs' Names**

**1.     The Defendants are in the business of marketing and selling investment strategies.**

20.     Upon information and belief, Defendant Agora is a holding company for various "publishers," including Defendant Taipan, which produces a daily "e-letter" entitled *Smart Investing Daily*, and generates earnings and profits from the marketing and sale of its subsidiaries' products and services. Taipan, for its part, is apparently in the business of marketing and selling investment strategies.

21.     Defendants electronically distribute *Smart Investing Daily* (along with a multitude of other "e-letters") to their subscribers on a daily basis. Taipan's business is directed towards individual investors. Given New York's significant community of investors in the financial and

commodities markets, Taipan, upon information and belief, solicits and generates business by targeting subscribers in New York, and throughout the United States, through its electronic distributions. Certain archived versions of Taipan's "e-letters" are also publicly available on its website to non-subscribers (www.taipanpublishinggroup.com).

22.    Although characterized as "e-letters," *Smart Investing Daily* is in truth a sales tool used to advertise Taipan's products and services. Each "e-letter" leads directly to a purchasing page by providing links for users to purchase products and services offered by Taipan. Taipan's website, along with its "e-letters" are interactive, meaning through a few clicks they are guiding the consumer to become a subscriber and buy the products that Taipan is selling. There can be no doubt that these are advertisements, marketing materials and/or sales tools.

**2.    The Defendants are distributing blatantly false materials regarding Plaintiffs.**

23.    On or about April 10, 2011, Defendants distributed an advertisement for its "Trader's Key" product through its *Smart Investing Daily* "e-letter" in which they identified "billionaire Thomas Kaplan" and "his company Tigris Financial" as having "amassed a $2 billion fortune in gold using the Trader's Key." The following passage was contained in the body of the online advertisement:

> Mega-Trade #1: Follow the Yellow Brick Road to a Potential 7-Figure Fortune!
>
> You know gold has had a good run lately. But the rush for gold has not even begun according to billionaire Thomas Kaplan, a New York-born commodities mogul.
>
> **In fact he is so convinced of this that he has put nearly $2 billion of his own money into physical gold through his company Tigris Financial.**
>
> Gold is in transition to being viewed as a "neutral currency." As governments around the world fight against the crushing weight of debt, they will discover they have no option other than to print

large quantities of paper money. This will devalue all paper currencies relative to gold, the only "neutral currency" not subject to the whims of a printing press.

**Kaplan has amassed a $2 billion fortune in gold using the Trader's Key... and still has it "all in"!**

In other words, he believes that gold is going a lot higher, and has backed up this belief with a majority of his wealth.

His secret strategy is so enticing that billionaires John Paulson and George Soros are now following him, and if you want a chance to make an incredible fortune, you should do the same.

Chances are you've never thought of owning gold this way. When you combine you can do the same... using this unique gold strategy along with the Trader's Key.

*See* Exhibit 1 (attached hereto) at page 17 (emphasis added).

24.     As an initial matter, neither Mr. Kaplan nor Tigris have consented to Taipan's use of Mr. Kaplan's and/or Tigris's name or mark.

25.     For Taipan to state that Mr. Kaplan "has amassed a $2 billion fortune in gold **using** the Trader's Key . . ." (emphasis added) is patently false. Mr. Kaplan does not and has never used "Trader's Key." Taipan is implying that Mr. Kaplan's success is due to his reliance on the "Trader's Key," rather than his own expertise. In fact, Mr. Kaplan's confidence and success in gold investing is based on his years of experience investing in gold and other commodities, not on Taipan's "secret trading formula," as Defendants would have readers believe.

26.     Further, to assert, in the context of this advertisement, that Mr. Kaplan "is so convinced of this that he has put nearly $2 billion of his own money into physical gold **through his company Tigris Financial**" (emphasis added) would lead readers to believe that Tigris also uses the "Trader's Key" as part of its investing strategy or has benefitted from it, which is entirely false. It is not part of Mr. Kaplan's or Tigris's business in any way. Neither Mr. Kaplan

nor Tigris have ever used any of Taipan's products or services.  Such public statements by Defendants are plainly false.

> **3.** **Defendants' materials are likely to confuse or deceive consumers into believing that Tigris and/or Mr. Kaplan endorse or sponsor Taipan.**

27.    Taipan is clearly using Mr. Kaplan's and Tigris's name for advertising and marketing purposes and these advertisements or marketing materials falsely or misleadingly represent that Plaintiffs' endorse or are affiliated with Taipan and its products.   The advertisements are likely to confuse or deceive consumers and malign Mr. Kaplan's good name and reputation, which are important to protect in that Mr. Kaplan is the face of a leading company in the gold and commodities industry.

28.    While Plaintiffs have no affiliation whatsoever with Taipan or its business, services or product offerings, a consumer or customer of Taipan would reasonably infer from the language of these ads that Mr. Kaplan and Tigris have some affiliation, connection or association with Taipan and/or its products.  Defendants would have consumers and the public at large believe falsely that the success of Mr. Kaplan and Tigris is attributable to the "Trader's Key" product when nothing could be further from the truth.  Indeed, a consumer is likely to be confused or deceived into thinking that Mr. Kaplan and Tigris endorse "Trader's Key."  Mr. Kaplan is well known in the financial world, as is the company that he developed through his own talent, skill and dedication, and Defendants' false representations or descriptions of facts, which are likely to confuse consumers into believing falsely that Mr. Kaplan and/or Tigris are endorsing Taipan and its products, give Defendants an unfair commercial advantage and constitute unfair competition and false advertising, among other violations.

29.    The references to Mr. Kaplan and Tigris are clearly used in the advertising context and do not establish the content and quality of any news media.  Taipan is not a news

organization or medium, and its publications are not news. Importantly, the bottom of the page quoted above contains the phrase, in large bold print, "Satisfaction Guaranteed -- Or Your Money Back!" and an interactive "Join Us" button (*see* Exhibit 1 at pages 27-28), which leads directly to an ordering page. *See* Exhibit 2 attached hereto. These are not the types of messages included in a news article. Taipan is also selling a product known as "Macro Trader" in the same advertisements. According to the ads, a "Macro Trader" subscription comes with "FREE REPORT #2 -- '*The Trader's Key: How to Finally Unlock the Door to Lifelong Wealth.*'"

30.    Through these advertisements, Plaintiffs are clearly attempting to profit off of the entrepreneurial success of Mr. Kaplan and Tigris by falsely conveying that they endorse Taipan's products and services or are otherwise connected or affiliated with Defendants, when nothing could be further from the truth. The references to Mr. Kaplan and Tigris are directly related to the main purpose and subject of the advertisements, namely selling Taipan's products and services. The language of the offending material links Mr. Kaplan to the very products being offered for sale, which also goes to the heart of the rights of privacy and publicity.

31.    To Plaintiffs' dismay, these damaging statements by Defendants are apparently spreading. As of the date of this filing, the offending material was not only publicly available on Taipan's website (at http://www.taipanpublishinggroup.com/tpg/market-alert/jmtfive-sidem.html), but had been reproduced on dozens of other sites on the Internet.

### 4.    For Plaintiffs to be mistakenly associated with Defendants is highly damaging to their reputation and business.

32.    Taipan is not a company that Plaintiffs desire to be mistakenly connected with by the public. According to some user reviews online, Taipan's services are highly dubious, even fraudulent. One displeased user has stated: "Taipan Scam alert! I tried these turkeys and have done nothing but lose money. I'm talking tens of thousands. They change the names of their

publications frequently so no one catches on that about 90% of their recommendations are losers." *See* Exhibit 3 attached hereto (*Taipan Publishing Group, www.taipanpublishinggroup.com Reviews*, REVIEW CENTRE, http://www.reviewcentre.com/reviews172077.html). For a leading executive and his company to be affiliated with an organization that is causing this type of public reaction is extremely damaging. The inference that Mr. Kaplan and Tigris are associated with this organization may scare off potential business partners, for example.

33.    Perhaps more to the point, Taipan's parent Agora and one of its former subsidiaries, Pirate Investor LLC ("Pirate"), and Pirate's editor-in-chief, were sued by the Securities and Exchange Commission and Pirate and its editor were found to have violated Section 10(b) of the Exchange Act of 1934 and Rule 10b-5. *See SEC v. Agora, Inc.*, No. MJG-03-CV-1042 (D. Md. Nov. 13, 2003). The Maryland District Court found that they had engaged in a scheme to defraud public investors by disseminating false information in several Internet newsletters in which it claimed to have inside information about certain public companies and offered to sell that inside information to newsletter subscribers. Pirate (now apparently operating under a new name) and its editor were fined $1.5 million in penalties. The Court of Appeals for the Fourth Circuit affirmed. *See SEC v. Pirate Investor, LLC*, 580 F.3d 233 (4th Cir. 2009). The tactics that were the basis for the federal securities law violations are strikingly similar to those now practiced by Taipan. Needless to say, any risk of association with Agora and Taipan and their dubious products will be damaging to Mr. Kaplan's and Tigris's valuable reputations.

34.    Taipan has described Mr. Kaplan in its advertisement as a "New York-born commodities mogul" and thus, is clearly familiar with Mr. Kaplan and Tigris and is likely aware that both are located in New York. Further, readers in New York and elsewhere are able to view

these "e-letters" on Taipan's website and another website and can purchase Taipan products directly online.  By disseminating these advertising materials on the Internet, Defendants have damaged and continue to damage Mr. Kaplan's and Tigris's reputations in the New York financial world and elsewhere.  Accordingly, Defendants should reasonably expect their acts to have consequences in New York.

**C.     Defendants Refuse to Cease and Desist**

35.     Tigris became aware of the Defendants' unlawful use of Tigris's and Mr. Kaplan's names on or around May 27, 2011, when its public relations firm brought the advertisements to its attention.  Tigris's public relations firm monitors print, broadcast and online media on a regular basis for articles and advertisements that mention Tigris, Mr. Kaplan and/or their affiliates.

36.     By letter dated June 3, 2011, Plaintiffs, through their undersigned counsel, wrote to Sandy Franks, Executive Publisher of Taipan, setting forth the conduct constituting a violation of Plaintiffs' rights and asking that Defendants cease and desist from the use of "Mr. Kaplan's name, image, and/or likeness, the use of statements made by Mr. Kaplan, and Tigris's trade names or marks, in any and all advertising, marketing or promotion of Taipan, its business, products or services, whether in radio, television, Internet, print or otherwise."  *See* Exhibit 4 (without attachment) attached hereto.

37.     In an unsupported effort to refute Plaintiffs' claims, Defendants responded by letter dated June 14, 2011, and have not ceased their unlawful, egregious and blatant conduct.

38.     The continued presence of this violative material on the Internet, notwithstanding Plaintiffs' prior protest, makes manifest that Defendants are willfully violating Plaintiffs' rights for their own financial gain.

## FIRST CAUSE OF ACTION
### (on behalf of all Plaintiffs)

### Federal Unfair Competition, False Endorsement and False Representation –
### 15 U.S.C. §1125(a)(1)(A)

39.     Plaintiffs repeat and reallege each and every allegation above with the same force and effect as if set forth fully herein.

40.     Defendants' unauthorized and willful false and misleading representations of fact that Plaintiffs have used or benefited from Defendants' products/services, including "Traders Key," and the unauthorized use of Plaintiffs' names and marks constitutes unfair competition, false or misleading descriptions or representations of fact, and false endorsement, which are likely to cause confusion, mistake or to deceive consumers or the relevant public in and affecting interstate commerce, all in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

41.     Defendants' acts were and are intentionally designed to entice their customers and the public to purchase its products, services, or other commercial activities, and their materially false representations and descriptions of fact and use of Plaintiffs' names and marks were and are likely to deceive or confuse the public into believing falsely that Plaintiffs endorse, sponsor, or are otherwise affiliated or associated with the Defendants, their goods/services or commercial activities, when that is certainly not the case.

42.     Upon information and belief, consumers or members of the public are likely to be confused, deceived and misled by Defendants' false statements and representations, and have purchased or are likely to purchase products and services from Defendants as a result thereof.

43.     Defendants availed themselves of the advantages of Plaintiffs' extensive efforts, knowledge, expertise, goodwill, and fine reputation willfully and deliberately with knowledge of

Plaintiffs' rights and with the intent to unfairly commercially benefit Defendants at Plaintiffs' expense.

44.     As a direct and proximate result of the acts of Defendants as alleged herein, Plaintiffs have suffered and will continue to suffer great damage to their business, goodwill, reputations, and profits, while Defendants are profiting at Plaintiffs' expense.

45.     Plaintiffs have no adequate remedy at law for this unfair competition.   Unless Defendants are preliminarily and permanently enjoined by the Court, Plaintiffs will continue to suffer irreparable harm.

46.     Accordingly, Plaintiffs are entitled to (i) injunctive relief as set forth below, (ii) an award against Defendant in the amount of three times Plaintiffs' damages, such amount to be determined at trial, (iii) destruction of all infringing materials, and (iv) Plaintiffs' costs and attorneys' fees incurred in connection with this action.

47.     Pursuant to 15 U.S.C. 1117(a), Plaintiffs are also entitled to disgorgement of profits arising from Defendants' unlawful conduct as well as an award of attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### (on behalf of all Plaintiffs)

### Federal False Advertising – 15 U.S.C. §1125(a)(1)(B)

48.     Plaintiffs repeat and reallege each and every allegation above with the same force and effect as if set forth fully herein.

49.     Defendants' unauthorized and willful false or misleading representations of fact and use of Plaintiff's names and/or marks in commercial advertising and promotion constitutes false advertising, false representation or misleading description of fact, in and affecting interstate commerce in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

50.     As a direct and proximate result of the acts of Defendants as alleged herein, Plaintiffs have suffered and will continue to suffer great damage to their business, goodwill, reputations, and profits, while Defendants are profiting at Plaintiffs' expense.

51.     Plaintiffs have no adequate remedy at law for this unfair competition.  Unless Defendants are preliminarily and permanently enjoined by the Court, Plaintiffs will continue to suffer irreparable harm.

52.     Accordingly, Plaintiffs are entitled to (i) injunctive relief as set forth below, (ii) an award against Defendant in the amount of three times Plaintiffs' damages, such amount to be determined at trial, (iii) destruction of all infringing materials, and (iv) Plaintiffs' costs and attorneys' fees incurred in connection with this action.

53.     Pursuant to 15 U.S.C. 1117(a), Plaintiffs are also entitled to disgorgement of profits arising from Defendants' unlawful conduct as well as an award of attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### (on behalf of Plaintiff Thomas Kaplan)

### Violation of Right to Privacy and Right of Publicity – New York Civil Rights Law §§ 50, 51

54.     Plaintiff Thomas Kaplan repeats and realleges each and every allegation above with the same force and effect as if set forth fully herein.

55.     Plaintiff Thomas Kaplan has an exclusive proprietary interest in the publicity value of his name and persona as well as the attendant exclusive right to utilize or license others to exploit such name or persona for commercial gain pursuant to Civil Rights Law §§ 50 and 51.

56.     Defendants used Plaintiff Thomas Kaplan's name, image and persona for advertising purposes and for purposes of trade in connection with the marketing, promotion, and

sale of Defendants' products/services, including "Trader's Key" and "Macro Trader," both within and outside the State of New York.

57.     Plaintiff Thomas Kaplan did not consent in writing or otherwise to Defendants' use of his name or persona in any context, including, without limitation, in connection with the marketing, promotion, and sale of Defendants' products/services.

58.     As a result, Defendants have violated Plaintiff Thomas Kaplan's right to privacy and right of publicity under Sections 50 and 51 of the New York Civil Rights Law.

59.     Defendants' actions described above were deliberate, willful, and in conscious disregard for Plaintiff Thomas Kaplan's rights.

60.     As a result of Defendants' violation of his right to privacy and right of publicity, Plaintiff Thomas Kaplan has suffered, and will continue to suffer, irreparable injury, and has incurred, and will continue to incur, damage in an amount to be determined at trial.

61.     Mr. Kaplan has no adequate remedy at law for the violation of his rights of privacy and publicity.   Unless Defendants are preliminarily and permanently enjoined by the Court, Mr. Kaplan will continue to suffer irreparable harm.

62.     By reason of the foregoing, Plaintiff Thomas Kaplan is entitled to (i) injunctive relief as set forth below, (ii) an award of damages, such amount to be determined at trial, and (iii) Plaintiff Thomas Kaplan's costs and attorneys' fees incurred in connection with this action.

**FOURTH CAUSE OF ACTION**
**(on behalf of all Plaintiffs)**

**<u>Unfair Competition/Misappropriation – New York Common Law</u>**

63.     Plaintiffs repeat and reallege each and every allegation above with the same force and effect as if set forth fully herein.

64.     Defendants' unauthorized and false or misleading descriptions or representations of fact, false endorsement, and false advertising, and unauthorized use of Plaintiffs' names and/or marks which are likely to cause confusion, or to cause mistake or to deceive consumers and the relevant public constitutes unfair competition under the common law of the State of New York.

65.     By reason of Defendants' material false statements and representations and unauthorized use of Plaintiffs' names and/or marks, consumers have been and continue to be deceptively led to believe that Plaintiffs endorse, sponsor, or are otherwise affiliated or associated with Defendants' goods, services, or other commercial activities, when in fact that is not the case.

66.     Defendants' acts were and are intentionally designed to entice consumers to purchase their products, services, or other commercial activities, and their materially false representations are likely to deceive or confuse and have deceived or confused the public into believing that Plaintiffs endorse, sponsor, or are otherwise affiliated or associated with the Defendants.

67.     On information and belief, members of the public have been and are likely to be confused, deceived and misled by Defendants' false statements and representations, and have purchased and are likely to purchase products and services from Defendants as a result thereof.

68.     Defendants availed themselves of and misappropriated the advantages of Plaintiffs' extensive efforts, knowledge, expertise, goodwill, and fine reputation willfully and deliberately with knowledge of Plaintiffs' rights and with the intent to unfairly commercially benefit Defendants at Plaintiffs' expense.

69.     As a direct and proximate result of the acts of Defendants as alleged herein, Plaintiffs have suffered and will continue to suffer great damage to their business, goodwill, reputations, and profits, while Defendants are profiting at Plaintiffs' expense.

70.     Plaintiffs have no adequate remedy at law for this unfair competition.  Unless Defendants are preliminarily and permanently enjoined by the Court, Plaintiffs will continue to suffer irreparable harm.

71.     Accordingly, Plaintiffs are entitled to (i) injunctive relief as set forth below, (ii) an award against Defendant in the amount of three times Plaintiffs' damages, such amount to be determined at trial, (iii) destruction of all infringing materials, and (iv) Plaintiffs' costs and attorneys' fees incurred in connection with this action.

### FIFTH CAUSE OF ACTION
#### (on behalf of all Plaintiffs)

#### Deceptive Acts and Practices  – New York General Business Law § 349

72.     Plaintiffs repeat and reallege each and every allegation above with the same force and effect as if set forth fully herein.

73.     By reason of Defendants' material false statements and representations, the public is deceptively led to believe that Plaintiffs endorse, sponsor, or are otherwise affiliated or associated with Defendants' goods, services, or other commercial activities, when in fact that is not the case.

74.     Plaintiffs have no adequate remedy at law for Defendants' deceptive acts and practices.  Unless Defendants are preliminarily and permanently enjoined by the Court, Plaintiffs will continue to suffer irreparable harm.

75.     Accordingly, Plaintiffs are entitled to (i) injunctive relief as set forth below, (ii) an award against Defendants in the amount of three times Plaintiffs' damages, such amount to be

determined at trial, and (iii) Plaintiffs' costs and attorneys' fees incurred in connection with this action.

**SIXTH CAUSE OF ACTION**
**(on behalf of all Plaintiffs)**

**<u>False Advertising – New York General Business Law § 350</u>**

76.     Plaintiffs repeat and reallege each and every allegation above with the same force and effect as if set forth fully herein.

77.     Defendants' material false statements and representations constitute false advertising in the conduct of business, trade, or commerce, by which the public is deceptively led to believe that Plaintiffs endorse, sponsor, or are otherwise affiliated or associated with Defendants' goods, services, or other commercial activities, when in fact that is not the case.

78.     Plaintiffs have no adequate remedy at law for Defendants' false statements and misrepresentations.  Unless Defendants are preliminarily and permanently enjoined by the Court, Plaintiffs will continue to suffer irreparable harm.

79.     Accordingly, Plaintiffs are entitled to (i) injunctive relief as set forth below, (ii) an award against Defendants in the amount of three times Plaintiffs' damages, such amount to be determined at trial, and (iii) Plaintiffs' costs and attorneys' fees incurred in connection with this action.

**SEVENTH CAUSE OF ACTION**
**(on behalf of all Plaintiffs)**

**<u>Unjust Enrichment</u>**

80.     Plaintiffs repeat and reallege each and every allegation above with the same force and effect as if set forth fully herein.

81.    Through their misconduct described above, Defendants have misappropriated Plaintiffs' identities, goodwill, and reputations for Defendants' own commercial benefit, and to Plaintiffs' detriment, thereby unjustly obtaining a benefit in equity and goodwill that rightfully belongs to Plaintiffs.

82.    Plaintiffs have no adequate remedy at law for this misconduct on the part of Defendants.   Unless Defendants are preliminarily and permanently enjoined by the Court, Plaintiffs will continue to suffer irreparable harm.

83.    By reason of the foregoing, Plaintiffs are entitled to (i) injunctive relief as set forth below, (ii) disgorgement of Defendants' profits and other unjust enrichment, such amount to be determined at trial, and (iii) Plaintiffs' costs and attorneys' fees incurred in connection with this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

A.    that Defendants, Taipan and Agora, their respective officers, agents, servants, employees, and attorneys, those persons in active concert or participation with Defendants who receive actual notice of the Court's order by personal service or otherwise, be permanently enjoined and restrained from:

> (i) using Mr. Kaplan's name, image, and/or likeness, statements made by Mr. Kaplan, or using Tigris's trade names or marks, in connection with any products or services or in any advertising, marketing or promotion of Defendants' business, products or services, whether in radio, television, Internet, print or otherwise;

> (ii) using the Plaintiffs' names or marks or any variant or any colorable imitations thereof, in a manner which is likely to confuse consumers as to the source or sponsorship of Defendants' business, website, products or services or as to the

nature, quality or characteristics of Defendants' products, or which is likely to tarnish Plaintiffs' names or marks;

(iii) making any false or misleading representation of fact concerning the source, nature, quality or characteristics of its business, products or services, including, but not limited to, representing falsely that Mr. Kaplan or Tigris have used or benefitted from Defendants' products/services; and

(iv) doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or the trade, or prospective purchasers of Defendants' products/services, as to the source, nature, composition or quality of products/services created, developed, produced, distributed, marketed, advertised, promoted, sold or offered for sale by Defendants, or likely to deceive members of the public or the trade, or prospective purchasers, into believing that there is some affiliation or connection between Defendants and Plaintiffs, or that Defendants' products/services are being created, developed, manufactured, distributed, marketed, advertised, promoted, sponsored, or endorsed by Plaintiffs or with their authorization, consent, approval or permission;

B.      that Defendants, in accordance with 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Plaintiffs within thirty days after entry of the injunction a report in writing under oath, setting forth in detail the manner and form in which it has complied with the injunction;

C.      that Plaintiffs recover their damages sustained as a result of Defendants' wrongful actions;

D.      that Plaintiffs recover all Defendants' profits made as a result of Defendants' wrongful actions;

E.      that Plaintiffs recover three times Defendants' profits made as a result of Defendants' wrongful actions or three times Plaintiffs' damages, whichever is greater;

F.      that Plaintiffs be awarded exemplary and punitive damages under New York law for Defendants' willful, intentional acts and tortious acts;

G.     that Plaintiffs recover their disbursements, costs and expenses, including reasonable attorneys' fees; and

H.     any other relief in favor of Plaintiffs that the Court finds just and reasonable.

Dated: New York, New York
      July 14, 2011

Respectfully submitted,

BAKER BOTTS L.L.P.

By: *Paul J Reilly*

Seth T. Taube
Paul J. Reilly
Maureen P. Reid
30 Rockefeller Plaza
New York, New York 10112-4498
Tel: (212) 408-2500
Fax: (212) 408-2501
seth.taube@bakerbotts.com
paul.reilly@bakerbotts.com
maureen.reid@bakerbotts.com

*Attorneys for Plaintiffs*